IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ORVELLE GOODNOUGH,                )
                                  )
                  Plaintiff,      )     Civil Case No. 06-396-KI
                                  )
        vs.                       )     OPINION AND ORDER
                                  )
JOANNE B. BARNHART, Commissioner  )
of Social Security Administration, )
                                  )
                  Defendant.      )


        Phil Studenberg
        200 Pine Street
        Klamath Falls, Oregon  97601

                Attorney for Plaintiff

        Karin J. Immergut
        United States Attorney
        District of Oregon
        Neil J. Evans
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, Oregon  97204-2902


Page 1 - OPINION AND ORDER

Terrye E. Shea
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administaration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant


KING, Judge:

Plaintiff Orvelle Goodnough brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

    If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

    The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

    The ALJ concluded that Goodnough had mental impairments of an organic mental disorder, affective disorder, somatoform disorder, and personality disorder, which in combination the ALJ found to be severe.  However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

Regarding physical impairments, the ALJ found that Goodnough did not have a severe physical impairment related to his reported back pain, based on the lack of objective clinical findings and diagnostic tests. The ALJ also noted that even though Goodnough was apparently misdiagnosed and treated as a child for a glandular disorder, an endocrine evaluation at age 11 showed only metabolic, bone, and joint structure findings that were entirely normal for his age. Based on the childhood testing and a 2000 neuropsychologist examination, the ALJ found that Goodnough's short lightweight statute was not relevant to the analysis of disability under the Act.

Based on all the evidence, the ALJ found that Goodnough had the residual functional capacity to perform simple routine jobs which are compatible with an individual who is not suited to interacting with the public. The ALJ rejected the opinion of treating physician Dr. Bomengen that Goodnough's mental impairments preclude him from all work, and likewise rejected the lay opinions of Goodnough's sister and mother.

Based on this analysis, the ALJ concluded that Goodnough could return to his past work as a janitor and was thus not disabled under the Act.

## FACTS

Goodnough, who was 58 years old at the time of the hearing, had work experience as a janitor, cook, laborer, traffic flagger, and assistant supervisor at a mission for the homeless. He attended school through the ninth grade. Goodnough alleges disability since October 20, 2002 due to lower back pain, depression, glandular condition, unable to handle stress, migraines, and a learning disability. Goodnough lived with his elderly mother until she passed away a year before

the hearing.  He then began living by himself, with his sister administering the money

Goodnough received from his mother's estate.

     At the age of seven, Goodnough was examined by an endocrinologist to look for the

cause of slow growth and generally slow development.  Although the doctor found no specific

hormonal abnormality from either Goodnough's history or physical examination, Goodnough

was put on hormone therapy a year later and in a few months grew four inches.

     When Goodnough was eleven years old, he was tested using the Wechsler Intelligence

Scale for Children.  Goodnough had a verbal IQ of 81, a performance IQ of 68, and a full scale

IQ of 72, characterized by the psychologist as low dull normal, high mental deficiency, and low

borderline, respectively.

     Goodnough has a small stature, standing 5 feet tall and weighing between 90 and 107

pounds as an adult.  He complains of lower back pain that starts after one and one half to two

hours of work, as stated in a questionnaire in January 2003.  In a questionnaire in March 2003,

however, Goodnough stated that the pain was constant.  Goodnough primarily takes

over-the-counter pain medication for his back pain.

     In February 2003, Goodnough was admitted to the hospital for a week after an overdose

of Dalmane and Darvocet, which contained enough acetaminophen to be a possibly lethal dose.

Goodnough reported feelings of no one wanting to help him.  After a mental health evaluation, it

was determined that Goodnough was not suicidal.  Goodnough was released after becoming

stable and was prescribed an antidepressant, which he had stopped taking at the time of the

hearing.

In April 2003, Goodnough was examined by a psychologist, Dr. Cole. Goodnough told Dr. Cole that he enjoyed fishing, playing videos, watching movies, getting on the Internet, seeing his friend once a month, and attending church once a month. Family members report that Goodnough watches television about twelve hours a day and helps at a food pantry once a week. Dr. Cole believed that Goodnough could work in a low-stress job where he can pace himself.

## DISCUSSION

I.    Rejection of the Opinions of Treating Physicians

Goodnough contends that the ALJ improperly rejected the opinions of his two treating physicians that he is unable to work.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the

record.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

1999).

      A.     Dr. Kliewer

      Dr. Kliewer, Goodnough's pediatrician, examined him again in 1979, when Goodnough

was 32 years old, and sent a letter to a state welfare agency in support of Goodnough receiving

assistance.  The letter stated:

> Orvelle Goodnough has been under my care since his birth and has a
> diagnosis of minimal brain damage and glandular abnormality.  His general
> physical condition otherwise is all right except for a very poor hygiene as [far] as
> his mouth is concerned with pyorrhea and many caries [in his] teeth.
>
> Orvelle was examined by me today, 11/14/79, and because of the above
> mentioned difficulties he has been and will be unable to maintain any gainful
> employment.  In addition to the above he has a difficulty as far as his height
> [stature] in that he is unable to perform the usual menial jobs which would be
> required of a day laborer.

Tr. 149.  Dr. Kliewer has a few other letters in the record with the same opinion, all written

between 1974 and 1979.

      The ALJ did not mention Dr. Kliewer.  Dr. Kliewer had no interaction with Goodnough

since 1979, when Dr. Kliewer stated his opinion that Goodnough could not maintain gainful

employment.  Goodnough does not allege disability until 2002.  He had significant work activity

until that time.  I find that the failure to address Dr. Kliewer's opinion is not an error because the

opinion did not concern any time period relevant to this analysis.

      B.     Dr. Bomengen

On April 22, 2003, Dr. Bomengen wrote to DDS:

> I have known this patient the majority of his life, approximately 30 years.
> As a child he had a learning disorder and was unable to stay on track.  Prior to my

care he was cared for by Dr. Kliewer, my partner.  I am enclosing records of his evaluations from the 1960's.

It is my opinion that this gentleman is not employable, by history of having multiple jobs in different fields and unable to stay on task, and social interactions have always been an impairment.  He is not able to concentrate.

I do not anticipate any changes in his mental status for the duration of his life and feel that he is disabled because of this.

Tr. 223.  Most of Dr. Bomengen's chart notes concern Goodnough's back pain.  His opinion is contradicted by the two examining psychologists as well as the DDS nonexamining doctors.

The ALJ rejected Dr. Bomengen's opinion as an extreme assessment, without significant support, that lends itself to medical advocacy and overstatement.  The ALJ noted that multiple mental health professionals had evaluated Goodnough and none found him incapable of performing simple jobs with no interaction with the public.  In contrast, Dr. Bomengen is either a family practice physician or internist and not a psychologist trained to appraise mental residual functional capacity to work.  The ALJ also noted Goodnough's good work history and spotty inconsistent psychological treatment history.  Finally, the ALJ noted that Goodnough was less than credible and tends to magnify his claims, a finding that Goodnough does not challenge.

The ALJ's reasoning is well supported by the record.  I particularly note Goodnough's full time work as a janitor from 1997 through the end of 2000, which at times included the supervision of three or four people.  Nothing in the record indicates that Goodnough's mental status is deteriorating–he has suffered with these problems his entire life.  The ALJ has given specific and legitimate reasons supported by substantial evidence in the record for his rejection of Dr. Bomengen's opinion.

II.    <u>Development of the Record</u>

Goodnough contends that the ALJ committed reversible error in failing to recontact his

treating physicians as required by 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1).  They both

state:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

> (1) We will first recontact your treating physician . . . to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and

to assure that the claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144,

1150 (9th Cir. 2001) (internal quotation omitted).  The duty is heightened if a claimant is

unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if:  (1) there is ambiguous evidence; (2) the ALJ

finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the

evidence is ambiguous.  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005).  The

supplementation can include subpoenaing the claimant's physicians, submitting questions to the

claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

allow the record to be supplemented.  <u>Tonapetyan</u>, 242 F.3d at 1150.

There is nothing ambiguous or lacking in the medical records requiring additional information from his treating physicians.  Goodnough was examined by two psychologists since 2000.  The ALJ fulfilled his duty to fully and fairly develop the record.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____15th_____ day of December, 2006.


     ___/s/ Garr M. King_____
     Garr M. King
     United States District Judge

Page 11 - OPINION AND ORDER